**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **VERSATA SOFTWARE, INC., F/K/A** | § | |
| **TRILOGY SOFTWARE, INC.;** | § | |
| **VERSATA DEVELOPMENT GROUP,** | § | |
| **INC., F/K/A TRILOGY DEVELOPMENT** | § | |
| **GROUP, INC.; and** | § | |
| **VERSATA COMPUTER INDUSTRY** | § | |
| **SOLUTIONS, INC., F/K/A TRILOGY** | § | |
| **COMPUTER INDUSTRY** | § | |
| **SOLUTIONS, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:07-cv-153** |
| | § | **JURY TRIAL DEMANDED** |
| **SAP AMERICA, INC. and SAP, AG,** | § | |
| | § | |
| **Defendants.** | § | |

**VERSATA'S REPLY TO SAP'S SECOND AMENDED COUNTERCLAIMS**

Plaintiffs Versata Software, Inc., *f/k/a* Trilogy Software, Inc., Versata Development Group, Inc., *f/k/a* Trilogy Development Group, Inc., and Versata Computer Industry Solutions, Inc., *f/k/a* Trilogy Computer Industry Solutions, Inc. (collectively, "Versata") hereby reply to the counterclaims set forth in SAP America, Inc.'s and SAP, AG's (collectively, "SAP") Second Amended Answer and Counterclaims, filed February 20, 2009, and state as follows in support thereof:

**AFFIRMATIVE DEFENSES**

SAP incorporates Paragraphs 38 and 40-131 and 133 of the Affirmative Defenses set forth in its Second Amended Answer into its Second Amended Counterclaims. Versata responds to incorporated Paragraphs 38 and 40-131 and 133 as follows:

38.     Versata denies the allegations in Paragraph 38 of SAP's Third Affirmative Defense.

40.     Versata admits the allegations in Paragraph 40 of SAP's Fifth Affirmative Defense.

41.     Versata admits the allegations in Paragraph 41 of SAP's Fifth Affirmative Defense.

42.     Versata denies the allegations in Paragraph 42 of SAP's Fifth Affirmative Defense.

43.     Versata admits that, on March 29, 1993, John Lynch, David Franke, and J.D. Harriman II filed application Ser. No. 39,949, which later issued as the '524 patent, with the Patent Office.  Versata admits that, on March 10, 1997, John Lynch and David Franke filed application Ser. No. 484,947, which later issued as the '798 patent, with the Patent Office (as a continuation of application No. 39,949).  Versata admits that, on March 10, 1997, John Lynch and David Franke filed application Ser. No. 8/815,399, which later issued as the '854 patent, with the Patent Office (as a continuation of application No. 484,947).  Versata expressly denies that, before the issuance of the '798 and '854 patents, one or more of the Configuration Applicants was aware of one or more items of material information and either affirmatively misrepresented a material fact, failed to disclose material information, and/or submitted false or misleading information with an intent to deceive the United States Patent and Trademark Office ("Patent Office").  Versata lacks information sufficient to ascertain the truth of the remaining allegations in Paragraph 43 of SAP's Fifth Affirmative Defense and, on that basis, denies the same.

44.     Versata admits that Gary Hecker and J.D. Harriman II ("Hecker & Harriman") were attorneys responsible for prosecution of the '524, '798, and '854 patents.  Versata admits that John Lynch and David Franke are the named inventors for the '524, '798, and '854 patents. Versata admits that Joseph Liemandt, Andrew Price, and Bhalchandra Ghatata are the named inventors for the '547 patent.  Versata admits that the '524 file history contains a declaration signed on May 10, 1993 by John Lynch and David Franke.  Versata admits that the named inventors and prosecuting patent attorneys of the '524, '798, and '854 patents were under an affirmative duty to disclose information material to patentability to the Patent Office.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 44 of SAP's Fifth Affirmative Defense.

45.     Versata denies the allegations in paragraph 45 of SAP's Fifth Affirmative Defense.

46.     Versata admits that an article listing as author John McDermott and entitled "R1: A Rule-Based Configurer of Computer Systems" (the "*McDermott* Article") was published in the journal *Artificial Intelligence* in 1982.  Versata admits that the *McDermott* Article refers to a configurator called R1/XCON.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 46 of SAP's Fifth Affirmative Defense.

47.     Versata admits that the *McDermott* article was noted in the specifications of the '524, '798, and '854 patents. Except as expressly admitted, Versata denies the allegations contained in Paragraph 47 of SAP's Fifth Affirmative Defense.

48.     Versata admits that the '798 patent contains the following language:

Early computer-based configuration systems employed an approach referred to as the rule-based approach. Rule-based configuration systems define rules (i.e., "if A, then B") to validate a selection of configuration alternatives. Digital Equipment Corporation's system, called R1/XCON (described in McDermott,

> John, "R1: A Rule-Based Configurer of Computer Systems", *Artificial Intelligence* 19, (1982), pp. 39-88) is an example of a rule-based configuration system. R1/XCON evaluates an existing independently-generated system order and identifies any required modifications to the system to satisfy the model's configuration rules. The rules used to perform the configuration and validation processes are numerous, interwoven, and interdependent. Before any modification can be made to these rules, the spider's web created by these rules must be understood. Any changes to these rules must be made by an individual that is experienced and knowledgeable regarding the effect that any modifications will have to the entire set of rules. Therefore, it is difficult and time consuming to maintain these rules.
>
> A possible solution to the problems associated with rule-based systems is a constraint-based system. A constraint-based system places constraints on the use of a component in a configuration.

Except as expressly admitted, Versata denies the allegations contained in Paragraph 48 of SAP's Fifth Affirmative Defense.

49. Versata denies the allegations contained in Paragraph 49 of SAP's Fifth Affirmative Defense.

50. Versata denies the allegations contained in Paragraph 50 of SAP's Fifth Affirmative Defense.

51. Versata denies the allegations contained in Paragraph 51 of SAP's Fifth Affirmative Defense.

52. Versata admits that an article listing as authors Sanjay Mittal and Felix Frayman and entitled "Towards a Generic Model of Configuration Tasks" (the "*Mittal* Article") was published in the Proceedings of the Eleventh International Conference on Artificial Intelligence in 1989. Versata admits that the *Mittal* Article refers to a configurator called "COSSACK." Except as expressly admitted, Versata denies the allegations contained in Paragraph 52 of SAP's Fifth Affirmative Defense.

53.     Versata admits that an article listing as authors Sanjay Mittal and Felix Frayman and entitled "COSSACK: A Constraints-Based Expert System for Configuration Tasks" (the "*Frayman* Article") was published in Knowledge Based Expert Systems in Engineering: Planning and Design in 1987.  Versata admits that the *Frayman* Article refers to a configurator called "COSSACK."  Except as expressly admitted, Versata denies the allegations contained in Paragraph 53 of SAP's Fifth Affirmative Defense.

54.     Versata denies the allegations contained in Paragraph 54 of SAP's Fifth Affirmative Defense.

55.     Versata denies the allegations in Paragraph 55 of SAP's Fifth Affirmative Defense.

56.     Versata denies the allegations in Paragraph 56 of SAP's Fifth Affirmative Defense.

57.     Versata admits that U.S. Patent No. 4,591,983 ("the Bennett patent") issued on May 27, 1986, is entitled "Hierarchical Knowledge System," and lists as the assignee Teknowledge, Inc. Except as expressly admitted, Versata denies the allegations contained in Paragraph 57 of SAP's Fifth Affirmative Defense.

58.     Versata admits that the '798 patent contains the following language:

Bennett et al., U.S. Pat. No. 4,591,983 provides an example of a constraint-based system that employs a recognition or verification approach to system configuration instead of a generative approach. That is, Bennett merely validates an independently-configured system. In essence, an order is generated by an independent source such as a salesperson, and Bennett is used to verify that the system contained in the order does not violate any constraints. Bennett does not generate a system configuration based on needs or component requests (i.e., a generative approach). Thus, Bennett does not provide the capability to interactively configure a system by interactively selecting its components.

A model consists of all of the elements that may be included in a configured system. In Bennett, the model elements are grouped into an

aggregation hierarchy. An aggregation hierarchy creates hierarchical levels that represent a group of elements. Branches from one entry in the current level expand the entry, and the entry is "composed of" the elements in the lower level branches. For example, a desktop computer system is "composed of" a keyboard, a monitor, and a system box. A system box is "composed of" a power supply, motherboard, cards, and storage devices. The "composed of" relationship merely describes the elements that comprise another element. However, the "composed of" relationship does not define the structural relationships between the model elements. The "composed of" relationship does not describe the physical, structural relationships among the elements such as "physically contained inside," "physically subordinate part of," and "physically connected to." Using the desktop computer system previously described, it cannot be determined whether or not a monitor is "physically contained inside" a desktop computer system. A system box is "composed of" storage devices, however it cannot be determined whether one or more of the storage devices are "physically contained inside" the system box.

Except as expressly admitted, Versata denies the allegations contained in Paragraph 58 of SAP's Fifth Affirmative Defense.

59.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 59 of SAP's Fifth Affirmative Defense and, on that basis, denies the same.

60.     Versata admits that on or about December 8, 1994, Trilogy sued Teknowledge, the assignee of the Bennett patent, in the Northern District of California for a declaratory judgment of non-infringement of the Bennett patent (*Trilogy Dev. Group v. Teknowledge Corp.*, No. 3:94-cv-0422).  Versata admits that Trilogy and Teknowledge settled the litigation.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 60 of SAP's Fifth Affirmative Defense.

61.     Versata denies the allegations in Paragraph 61 of SAP's Fifth Affirmative Defense.

62.     Versata denies the allegations in Paragraph 62 of SAP's Fifth Affirmative Defense.

63.     Versata admits that an article listing as authors Michael Heinrich and Ernst Werner Jungst and entitled "A Resource-Based Paradigm for the Configuring of Technical Systems from Modular Components" (the "*Heinrich* Article") was published in the Proceedings of the Seventh IEEE Conference on Artificial Intelligence Applications in 1991.  Versata admits that the *Heinrich* Article refers to a configurator called "COSMOS."   Except as expressly admitted, Versata denies the allegations contained in Paragraph 63 of SAP's Fifth Affirmative Defense.

64.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 64 of SAP's Fifth Affirmative Defense and, on that basis, denies the same.

65.     Versata denies the allegations in Paragraph 65 of SAP's Fifth Affirmative Defense.

66.     Versata denies the allegations in Paragraph 66 of SAP's Fifth Affirmative Defense.

67.     Versata lacks information sufficient to ascertain the truth of SAP's allegation that the Configuration Applicants were aware of the Quintero PCT application before issuance of the '798 and '854 patents.  Versata denies the remaining allegations in Paragraph 67 of SAP's Fifth Affirmative Defense.

68.     Versata admits that, on March 21, 1994, David Franke, John Lynch, and Hecker & Harriman filed an international patent application based on the '524 patent application, listing as inventors David Franke and John Lynch, which received the number PCT/US94/03445 (also WO 94/23372).  Versata admits that the European counterpart application to PCT/US94/03445, which claimed the same priority date and application date as the '524, '798, and '854 patents,

was given the number EP 94912345.9.   Except as expressly admitted, Versata denies the allegations contained in Paragraph 68 of SAP's Fifth Affirmative Defense.

69.     Versata admits that on May 10, 1996, the European Patent Office issued a Supplemental European Search Report in the European counterpart application. Versata admits that the Supplemental European Search Report listed the Quintero PCT Application No. WO-A-93 01557 as a document that was "particularly relevant if taken alone" with respect to claims 1-4 pending in the European counterpart application. Except as expressly admitted, Versata denies the allegations contained in Paragraph 69 of SAP's Fifth Affirmative Defense.

70.     Versata admits that the Manual of Patent Examining Procedure § 2001.06(a) states that "Applicants and other individuals, as set forth in 37 CFR 1.56, have a duty to bring to the attention of the Office any material prior art or other information cited or brought to their attention in any related foreign application."  Except as expressly admitted, Versata denies the allegations contained in Paragraph 70 of SAP's Fifth Affirmative Defense.

71.     Versata lacks information sufficient to ascertain the truth of SAP's allegation that the Configuration Applicants received a copy of the May 10, 1996 Supplemental European Search Report listing the Quintero PCT application and a copy of the Quintero PCT Application. and, on that basis, denies the same.  Versata denies the remaining allegations in Paragraph 71 of SAP's Fifth Affirmative Defense.

72.     Versata denies the allegations in Paragraph 72 of SAP's Fifth Affirmative Defense.

73.     Versata denies the allegations in Paragraph 73 of SAP's Fifth Affirmative Defense.

74.     Versata admits that Esther Dyson, Trilogy Development Group: Three Times Nice, RELEASE 1.0 (Oct. 31, 1991) ("*Dyson*") calls "SalesBUILDER" Trilogy's "initial product" and "a configuration-management-system development system targeted at companies configuring their own products for sale to customers."  Except as expressly admitted, Versata denies the allegations contained in Paragraph 74 of SAP's Fifth Affirmative Defense.

75.     Versata admits that Trilogy Development Group, Inc. and Pyramid Technology Corporation entered into an Agreement for Consultant's Services relating to a Trilogy Configuration engine on October 18, 1990.  Versata admits that Trilogy Development Group, Inc. and Silicon Graphics, Inc. entered into a Software License Agreement relating to a Trilogy Configurator on March 28, 1991.  Versata admits that Trilogy Development Group, Inc. and Convex Computer Corporation entered into a Confidential Software Customization and License Agreement relating to a Trilogy Configurator on August 14, 1991.  Versata admits that Trilogy Development Group, Inc. and Pyramid Technology Corporation entered into an Agreement for Consultant's Services, Software Licensing, and Marketing Cooperation relating to a Trilogy Configurator System on December 5, 1991.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 75 of SAP's Fifth Affirmative Defense.

76.     Versata admits that Karen D. Moser, "Trilogy System to Ease Design of POS Apps.", 9 PC WEEK 61 (Mar. 16, 1992) stated that "SalesBUILDER version 1.0 is available now directly from Trilogy."  Versata admits that *Dyson* states that "Trilogy launched SalesBUILDER quietly last year to a small number of customers with which it is working closely."  Versata admits that *Dyson* lists LSI Logic, Silicon Graphics, Inc., and Pyramid Technology as Trilogy customers.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 76 of SAP's Fifth Affirmative Defense.

77.     Versata admits that a document entitled "SalesBUILDER: Redefining Sales in Configurable Products," bearing a copyright date of 1991, a printing date of 1992, and a last modification date of February 25, 1992, describes various SalesBUILDER features.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 77 of SAP's Fifth Affirmative Defense.

78.     Versata denies the allegations in Paragraph 78 of SAP's Fifth Affirmative Defense.

79.     Versata admits that Hecker & Harriman prosecuted Trilogy's '798 and '854 configuration patents as well as Trilogy's '400 and '350 patents.  Versata admits that the '400 patent file history includes an Office Action, dated January 4, 1998, stating that "Claims 1-50 are rejected under 35 USC § 103 as being unpatentable over Suzuki (U.S. Patent No. 5,053,957) in view of 'Automating and Integrating the Sales Function: How to Profit from Complexity and Customization", Enterprise Integration Strategies, v 9, n 11, November, 1992 (hereinafter "SalesBuilder"), and in further view of Katz et al. (U.S. Patent No. 5,224,034)."  Versata lacks information sufficient to ascertain the truth of SAP's allegation that, during prosecution of the '798 and '854 patents, the Configuration Applicants were aware of third party publications referencing "SalesBUILDER."  Versata denies the remaining allegations contained in Paragraph 79 of SAP's Fifth Affirmative Defense.

80.     Versata admits that "Automating and Integrating the Sales Function: How to Profit from Complexity and Customization," authored by H. Lee Hales and published in Enterprise Integration Strategies, Vol. IX, No. 11 (1992), contains the following language:

> Key elements of the SalesBUILDER application include customer need analysis, generation of appropriate configuration, graphical display of the recommended customer solution, interactive system planning, and customer quote generation…Simple diagrams represent the relationships between components…

10

> SalesBUILDER models only those components or parts that are affected by configuration… According to Trilogy, Digital's system requires over 10,000 rules to configure a VAX; SalesBUILDER, in contrast, is said to need less than 40 constraints to configure a comparable product line, ranging in unit value from $5,000 to $500,000.  This economy is achieved with an object-oriented approach and the use of generic configuration algorithms.  Components of a product are represented as objects.  These provide resources from other objects, subject to constraints.  In addition to technical constraints in design and production, marketing constraints can also be defined.  For example, the system will prevent a technically valid configuration that the manufacturer does not offer.

Versata lacks information sufficient to ascertain the truth of the remaining allegations in Paragraph 80 of SAP's Fifth Affirmative Defense and, on that basis, denies the same.

81.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 81 of SAP's Fifth Affirmative Defense and, on that basis, denies the same.

82.     Versata denies the allegations in Paragraph 82 of SAP's Fifth Affirmative Defense.

83.     Versata denies the allegations in Paragraph 83 of SAP's Fifth Affirmative Defense.

84.     Versata admits that "CC: Component Models For Qualitative Simulation - A User's Guide," by David Franke and Dan Dvorak was published in January 1990. Versata admits that "Component Connections Models, 1989 Workshop On Model-Based Reasoning," by David W. Franke and Daniel L. Dvorak was published in 1989.  Versata admits that these publications describe the Component Connection Model system developed by David Franke and Daniel Dvorak while graduate students at the University of Texas at Austin.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 84 of SAP's Fifth Affirmative Defense.

85.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 85 of SAP's Sixth Affirmative Defense and, on that basis, denies the same.

86.     Versata denies the allegations in Paragraph 86 of SAP's Fifth Affirmative Defense.

87.     In response to Paragraph 87 of SAP's Sixth Affirmative Defense, Versata incorporates by reference its answers to Paragraphs 40 - 86 of SAP's Fifth Affirmative Defense set forth above as if fully set forth herein.

88.     Versata admits the allegations in Paragraph 88 of SAP's Sixth Affirmative Defense.

89.     Versata denies the allegations in Paragraph 89 of SAP's Sixth Affirmative Defense.

90.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 90 of SAP's Sixth Affirmative Defense and, on that basis, denies the same.

91.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 91 of SAP's Sixth Affirmative Defense and, on that basis, denies the same.

92.     Versata admits that the '400 patent file history includes an Office Action, dated January 4, 1998, stating that "Claims 1-50 are rejected under 35 USC § 103 as being unpatentable over Suzuki (U.S. Patent No. 5,053,957) in view of 'Automating and Integrating the Sales Function: How to Profit from Complexity and Customization", Enterprise Integration Strategies, v 9, n 11, November, 1992 (hereinafter "SalesBuilder"), and in further view of Katz et al. (U.S. Patent No. 5,224,034)."  Versata admits that the '400 patent file history includes an Office Action, dated January 4, 1998, that contains following language:

> SalesBuilder discloses an automated pricing system developed by the assignee of the present invention and teaches hierarchies of products in which new products are defined in terms of existing product classes because new products are often variations of existing products. Since the Applicant was one of the principals developing SalesBuilder, it would have been obvious to him to combine the hierarchical structure of SalesBuilder with the product/organization pricing

system of Suzuki. See SalesBuilder at pages 3-4. The motivation to do so would be to avoid the maintenance overhead associated with updating large databases. See SalesBuilder at page 3.

Versata lacks information sufficient to ascertain the truth of the remaining allegations in Paragraph 92 of SAP's Sixth Affirmative Defense and, on that basis, denies the same.

93.     Versata admits that the '400 patent file history contains a June 8, 1998 amendment filed by J.D. Harriman II, which contains the following language:

> To the extent, if any, that SalesBuilder teaches or suggests using hierarchies of product groups, it would not be obvious to combine such hierarchical structure with the product/organizational pricing system of Suzuki. Furthermore, the result of such combination would not be the hierarchical arrangement of products and organizational groups claimed in claim 1. Claim 1 as amended claims arranging product and organizational groups in hierarchies in which a group at a lower level of the hierarchy is a subset of a group above that group in the hierarchy. . . . Applicant respectfully submits that arranging product and organizational groups in hierarchies as claimed in claim 1 as amended are not disclosed or suggested by Suzuki and SalesBuilder, alone or in combination.

Except as expressly admitted, Versata denies the allegations contained in Paragraph 93 of SAP's Sixth Affirmative Defense.

94.     Versata denies the allegations in Paragraph 94 of SAP's Sixth Affirmative Defense.

95.     Versata denies the allegations in Paragraph 95 of SAP's Sixth Affirmative Defense.

96.     Versata denies the allegations in Paragraph 96 of SAP's Sixth Affirmative Defense.

97.     Versata denies the allegations in Paragraph 97 of SAP's Sixth Affirmative Defense.

98.     Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 98 of SAP's Sixth Affirmative Defense and, on that basis, denies the same.

99.   Versata admits that the '400 patent and '350 patent contain the following language:

> A pricing application called R3 made by SAP has the prior art disadvantages explained above. For example, R3 requires a number of price adjustment tables and a number of database queries to retrieve applicable price adjustments. . . .

> In contrast, the prior art systems do not use denormalized price tables. For example, a pricing application called R3 made by SAP, does not utilize denormalized price tables. As a result, R3 has the prior art disadvantages in requiring a number of price adjustment tables and a number of database queries to retrieve applicable price adjustments.

Except as expressly admitted, Versata denies the allegations contained in Paragraph 99 of SAP's Sixth Affirmative Defense.

100.   Versata denies the allegations in Paragraph 100 of SAP's Sixth Affirmative Defense.

101.   Versata admits that the '350 patent file history includes an Office Action, dated June 23, 2000, stating that "Claims 51-70 are rejected under 35 U.S.C. 103(a) as unpatentable over Applicant's admitted prior art considered with Cragun et al."  Versata admits that the '350 patent file history includes an October 23, 2000 amendment filed by Gary A. Hecker, which contains the following language:

> Neither Cragun nor the Background teach, suggest or describe a method for determining the price of a product offered to purchasing organizations, and does not teach, suggest or describe retrieving pricing information stored in a database using the steps of the methods of the claimed invention. . . . the Background does not teach, suggest or describe the step of identifying organizational groups of which a purchasing organization is a member. . . . The claimed invention is a system for pricing products in multi-level product and organizational groups. While both inventions are related to methods involving the sale of products, they are not analogous art. Therefore, there is no motivation to combine the admitted prior art of product pricing programs with the invention of Cragun for automated sales promotion.

Except as expressly admitted, Versata denies the allegations contained in Paragraph 101 of SAP's Sixth Affirmative Defense.

102.   Versata admits that the '350 patent file history includes an April 24, 2001 amendment filed by Gary A. Hecker, which contains the following language:

> Neither the prior art in the Background nor Cragun, nor any combination of the two, suggest or describe a method for determining the price of a product by sorting pricing information according to pricing types, product hierarchy and organizational hierarchy and determining the price from sorted pricing information in an order. . . . Applicant believes that no effort has been made in the previous art to employ hierarchical sorting techniques to reduce the number of options that must be considered and the amount of computation required. . . . There is no suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the references, or to combine reference teachings, to generate the invention claimed here.

Except as expressly admitted, Versata denies the allegations contained in Paragraph 102 of SAP's Sixth Affirmative Defense.

103.   Versata admits that the '350 patent file history includes an amendment filed by Kent Chambers on January 31, 2002.   Except as expressly admitted, Versata denies the allegations contained in Paragraph 103 of SAP's Sixth Affirmative Defense.

104.   Versata denies the allegations in Paragraph 104 of SAP's Sixth Affirmative Defense.

105.   Versata denies the allegations in Paragraph 105 of SAP's Sixth Affirmative Defense.

106.   Versata denies the allegations in Paragraph 106 of SAP's Sixth Affirmative Defense.

107.   Versata admits that the '400 patent states that "[t]he prior art pricing systems utilize fixed and predetermined pricing and price adjustment tables that are 'hard-coded' and

cannot be changed to match a particular user's pricing preferences or the user's method of doing business." Except as expressly admitted, Versata denies the allegations contained in Paragraph 107 of SAP's Sixth Affirmative Defense.

108.    Versata admits that the '400 patent contains the quote "simplification of the prior art's price and price adjustment tables" and the quote "permits the user to select a tax rate for purchasing organizations located in various geographic locations." Except as expressly admitted, Versata denies the allegations contained in Paragraph 108 of SAP's Sixth Affirmative Defense.

109.    Versata admits that one or more of the other Pricing Applicants were involved in a project aimed at integrating SAP's R/3 technology with certain Trilogy technology. Except as expressly admitted, Versata denies the allegations contained in Paragraph 109 of SAP's Sixth Affirmative Defense.

110.    Versata denies the allegations in Paragraph 110 of SAP's Sixth Affirmative Defense.

111.    Versata denies the allegations in Paragraph 111 of SAP's Seventh Affirmative Defense.

112.    Versata admits that Igor Postelnik, Phil G. Gilbert, and Jocelyn E. Goldfein are the named inventors of the '235 patent. Versata admits that the '235 patent file history includes a declaration signed on April 27, May 1, and May 3, 2000, by Igor Postelnik, Phil G. Gilbert, and Jocelyn E. Goldfein, respectively. Versata admits that the declaration contains the following language: "I acknowledge the duty to disclose information, which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56." Versata admits that the named inventors and prosecuting patent attorneys of the '235 patent were under an affirmative duty to

disclose information material to patentability to the Patent Office.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 112 of SAP's Seventh Affirmative Defense.

113.   Versata admits the allegations in Paragraph 113 of SAP's Seventh Affirmative Defense.

114.   Versata denies the allegations in Paragraph 114 of SAP's Seventh Affirmative Defense.

115.   Versata admits that the '235 patent file history includes a March 16, 2006 Information Disclosure Statement filed by Kent C. Chambers that lists the Kennedy patent. Except as expressly admitted, Versata denies the allegations contained in Paragraph 115 of SAP's Seventh Affirmative Defense.

116.   Versata admits that the Kennedy patent was disclosed to the Patent Office in patent application U.S. Ser. No. 09/519,049.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 116 of SAP's Seventh Affirmative Defense.

117.   Versata admits that, on May 26, 2006, the '235 Applicants disclosed the Kennedy patent to the Patent Office in a continuation application of the '235 patent, U.S. Ser. No. 11/442,620.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 117 of SAP's Seventh Affirmative Defense.

118.   Versata admits that the file history for the '235 patent includes a May 2, 2006 Examiner's Comment stating in part that: "[t]he information disclosure statement filed March 16, 2006 fails to comply with 37 CFR 1.97(d) because it lacks a statement as specified in 37 CFR 1.97(e).  It has been placed in the application file, but the information referred to therein has not

been considered."  Except as expressly admitted, Versata denies the allegations contained in Paragraph 118 of SAP's Seventh Affirmative Defense.

119.    Versata denies the allegations in Paragraph 119 of SAP's Seventh Affirmative Defense.

120.    Paragraph 120 contains a legal conclusion regarding the Patent Rules to which no response is required. Versata denies the remaining allegations in Paragraph 120 of SAP's Seventh Affirmative Defense.

121.    Versata denies the allegations in Paragraph 121 of SAP's Seventh Affirmative Defense.

122.    Versata denies the allegations in Paragraph 122 of SAP's Seventh Affirmative Defense.

123.    Versata admits that the '235 patent lists pcOrder.com, Inc. as the assignee. Versata admits that the '235 patent describes the OrderServer product and contains the following language: "An example of an order request servicing system 110 is the OrderServer™ product by pcOrder.com, Inc."  Except as expressly admitted, Versata denies the allegations contained in Paragraph 123 of SAP's Seventh Affirmative Defense.

124.    Versata admits that pcOrder.com was selling OrderServer version 2.0 by August 13, 2000.  Except as expressly admitted, Versata denies the allegations contained in Paragraph 124 of SAP's Seventh Affirmative Defense.

125.    Versata denies that the '235 Applicants knew of the materiality of any products or documents related to the same subject matter as the '235 patent, and yet failed to disclose such information to the Patent Office with the intent to deceive the Patent Office.  Versata lacks

information sufficient to ascertain the truth of the remaining allegations in Paragraph 125 of SAP's Seventh Affirmative Defense and, on that basis, denies the same.

126.    Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 126 of SAP's Seventh Affirmative Defense and, on that basis, denies the same.

127.    Versata denies the allegations in Paragraph 127 of SAP's Seventh Affirmative Defense.

128.    Versata lacks information sufficient to ascertain the truth of the allegations in Paragraph 128 of SAP's Seventh Affirmative Defense and, on that basis, denies the same.

129.     Versata denies the allegations in Paragraph 129 of SAP's Seventh Affirmative Defense.

130.    Versata denies the allegations in Paragraph 130 of SAP's Seventh Affirmative Defense.

131.    Versata admits that Patent Application No. 09/518,766 (which issued as the '235 patent) and Patent Application No. 09/519,049 were filed on March 3, 2000.  Versata admits that the two applications were examined by different Patent Office art groups, and thus by different examiners.  Versata admits that throughout the prosecution of the '235 patent, the '049 Application was pending.  Versata admits that the named inventors and prosecuting patent attorneys of the '235 patent were under an affirmative duty to disclose non-cumulative information material to patentability to the Patent Office.  Versata admits that the pending claims of the '049 Application were rejected as obvious or anticipated in office actions dated Jan. 15, 2003, Sept. 8, 2003, June 4, 2004, May 6, 2005, and February 22, 2006, and that those office actions and their bases were not disclosed to the '235 Examiner.  Versata denies that these office actions and their bases were material to the patentability of the invention claimed in the '235

patent.  Except as expressly admitted, Versata denies the allegations in Paragraph 131 of SAP's Seventh Affirmative Defense.

133.    Versata denies the allegations in Paragraph 133 of SAP's Seventh Affirmative Defense.

## COUNTERCLAIMS

Versata answers SAP's counterclaims as follows:

## THE PARTIES

135.    On information and belief, Versata admits the allegations in Paragraph 135 of SAP's Counterclaims.

136.    On information and belief, Versata admits the allegations in Paragraph 136 of SAP's Counterclaims.

137.    Versata admits the allegations in Paragraph 137 of SAP's Counterclaims.

138.    Versata admits the allegations in Paragraph 138 of SAP's Counterclaims.

139.    Versata admits the allegations in Paragraph 139 of SAP's Counterclaims.

## JURISDICTION AND VENUE

140.    Versata admits that SAP alleges counterclaims arising under 28 U.S.C. §§ 2201-02 and 35 U.S.C. §§ 101, *et seq*. Versata denies that SAP is entitled to any declaratory relief.

141.    Versata admits that SAP seeks to obtain a declaratory judgment declaring that SAP does not and has not infringed the '798, '400, '854, '350, and '235 patents, and that the '798, '400, '854, '350, and '235 patents are invalid and unenforceable.  Versata denies that SAP is entitled to any declaratory relief regarding the patents-in-suit.

142.    Versata admits the allegations in Paragraph 142 of SAP's Counterclaims.

143.    Versata admits the allegations in Paragraph 143 of SAP's Counterclaims.

## FIRST COUNTERCLAIM

144.    Versata incorporates by reference its responses to Paragraphs 38 and 40-86 of SAP's Affirmative Defenses and its responses to Paragraphs 135-143 of SAP's Counterclaims as if fully set forth herein.

145.    Versata admits the allegations in Paragraph 145 of SAP's Counterclaims.

146.    Versata admits that SAP denies that it does not infringe or has infringed any claim of the '798 patent.  Except as expressly admitted, Versata denies the allegations in Paragraph 146 of SAP's Counterclaims.

147.    Versata admits that SAP contends that, insofar as SAP is determined to infringe any claim of the '798 patent, said claim is invalid and unenforceable.  Versata denies that any claim of the '798 patent is invalid or unenforceable.  Except as expressly admitted, Versata denies the allegations in Paragraph 147 of SAP's Counterclaims.

148.    Versata denies the allegations in Paragraph 148 of SAP's Counterclaims.

## SECOND COUNTERCLAIM

149.    Versata incorporates by reference its responses to Paragraphs 38 and 87-110 of SAP's Affirmative Defenses and its responses to Paragraphs 135-148 of SAP's Counterclaims as if fully set forth herein.

150.    Versata admits the allegations in Paragraph 150 of SAP's Counterclaims.

151.    Versata admits that SAP denies that it does not infringe or has infringed any claim of the '400 patent.  Except as expressly admitted, Versata denies the allegations in Paragraph 151 of SAP's Counterclaims.

152.     Versata admits that SAP contends that, insofar as SAP is determined to infringe any claim of the '400 patent, said claim is invalid and unenforceable.  Versata denies that any claim of the '400 patent is invalid or unenforceable.  Except as expressly admitted, Versata denies the allegations in Paragraph 152 of SAP's Counterclaims.

153.     Versata denies the allegations in Paragraph 153 of SAP's Counterclaims.

## THIRD COUNTERCLAIM

154.     Versata incorporates by reference its responses to Paragraphs 38 and 40-86 of SAP's Affirmative Defenses and its responses to Paragraphs 135-153 of SAP's Counterclaims as if fully set forth herein.

155.     Versata admits the allegations in Paragraph 155 of SAP's Counterclaims.

156.     Versata admits that SAP denies that it does not infringe or has infringed any claim of the '854 patent.  Except as expressly admitted, Versata denies the allegations in Paragraph 156 of SAP's Counterclaims.

157.     Versata admits that SAP contends that, insofar as SAP is determined to infringe any claim of the '854 patent, said claim is invalid and unenforceable.  Versata denies that any claim of the '854 patent is invalid or unenforceable.  Except as expressly admitted, Versata denies the allegations in Paragraph 157 of SAP's Counterclaims.

158.     Versata denies the allegations in Paragraph 158 of SAP's Counterclaims.

## FOURTH COUNTERCLAIM

159.     Versata incorporates by reference its responses to Paragraphs 38, 87-110, and 133 of SAP's Affirmative Defenses and its responses to Paragraphs 135-158 of SAP's Counterclaims as if fully set forth herein.

160.     Versata admits the allegations in Paragraph 160 of SAP's Counterclaims.

161.    Versata admits that SAP denies that it does not infringe or has infringed any claim of the '350 patent.  Except as expressly admitted, Versata denies the allegations in Paragraph 161 of SAP's Counterclaims.

162.    Versata admits that SAP contends that, insofar as SAP is determined to infringe any claim of the '350 patent, said claim is invalid and unenforceable.  Versata denies that any claim of the '350 patent is invalid or unenforceable.  Except as expressly admitted, Versata denies the allegations in Paragraph 162 of SAP's Counterclaims.

163.    Versata denies the allegations in Paragraph 163 of SAP's Counterclaims.

## FIFTH COUNTERCLAIM

164.    Versata incorporates by reference its responses to Paragraphs 38 and 111-131 of SAP's Affirmative Defenses and its responses to Paragraphs 135-163 of SAP's Counterclaims as if fully set forth herein.

165.    Versata admits the allegations in Paragraph 165 of SAP's Counterclaims.

166.    Versata admits that SAP denies that it does not infringe or has infringed any claim of the '235 patent.  Except as expressly admitted, Versata denies the allegations in Paragraph 166 of SAP's Counterclaims.

167.    Versata admits that SAP contends that, insofar as SAP is determined to infringe any claim of the '235 patent, said claim is invalid and unenforceable.  Versata denies that any claim of the '235 patent is invalid or unenforceable.  Except as expressly admitted, Versata denies the allegations in Paragraph 167 of SAP's Counterclaims.

168.    Versata denies the allegations in Paragraph 168 of SAP's Counterclaims.

## SAP'S REQUESTED RELIEF

Versata denies that SAP is entitled to the relief requested in subparagraphs (a)-(f) or any other relief on its Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Versata Software, Inc., f/k/a Trilogy Software, Inc.; Versata Development Group, Inc., f/k/a Trilogy Development Group, Inc.; and Versata Computer Industry Solutions, Inc., f/k/a Trilogy Computer Industry Solutions, Inc., pray for the following relief against Defendants SAP America, Inc. and SAP AG:

A.      that all relief requested by Versata in its Complaint be granted;

B.      that all relief requested by SAP in its Second Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Complaint be denied and that SAP take nothing by way of its Counterclaims;

C.      that SAP be ordered to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

D.      such other and further relief as the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

As affirmative defenses, Trilogy alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

SAP has failed to state a claim upon which relief can be granted, with respect to its Counterclaims I-V.

## SECOND AFFIRMATIVE DEFENSE

SAP has failed to state facts and/or a legal basis sufficient to permit recovery of its attorneys' fees and/or expenses for defending this suit.

## OTHER AFFIRMATIVE DEFENSES

Versata hereby gives notice that it intends to rely upon any other defense that may become available in this case and hereby reserves the right to amend this Reply to assert any such defense.

## DEMAND FOR JURY TRIAL

Versata demands a trial by jury of any and all issues triable of right before a jury.

Dated:  March 6, 2009.                         Respectfully submitted,


                                               **McKOOL SMITH, P.C.**


                                               By: */s/ Scott Cole*_____
                                               Sam Baxter
                                               Lead Attorney
                                               Texas State Bar No. 01938000
                                               505 E. Travis, Suite 105
                                               P.O. Box O
                                               Marshall, Texas 75670
                                               Telephone: (903) 927-2111
                                               Telecopier: (903) 927-2622
                                               sbaxter@mckoolsmith.com

                                               Mike McKool, Jr.
                                               Texas State Bar No. 13732100
                                               300 Crescent Court, Suite 1200
                                               Dallas, Texas 75201
                                               Telephone: (214) 978-4000
                                               Facsimile:  (214) 978-4044
                                               mmckool@mckoolsmith.com

                                               Peter J. Ayers
                                               Texas State Bar No. 24009882
                                               payers@mckoolsmith.com
                                               Scott L. Cole
                                               Texas State Bar No. 00790481
                                               scole@mckoolsmith.com
                                               John M. Shumaker
                                               Texas State Bar No 24033069
                                               jshumaker@mckoolsmith.com
                                               Laurie L. Gallun
                                               Texas State Bar No. 24032339
                                               lgallun@mckoolsmith.com
                                               Josh W. Budwin
                                               Texas State Bar No. 24050347
                                               jbudwin@mckoolsmith.com
                                               300 W. 6th Street, Suite 1700
                                               Austin, Texas 78701
                                               Telephone:  (512) 692-8700
                                               Facsimile:  (512) 692-8744


                                               **ATTORNEYS FOR PLAINTIFFS, VERSATA
                                               SOFTWARE, INC., VERSATA DEVELOPMENT
                                               GROUP, INC., AND VERSATA COMPUTER
                                               INDUSTRY SOLUTIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served

on all counsel of record on March 6, 2009:

*/s/ Scott Cole*