**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | | |
|---|---|---|
| **VERSATA SOFTWARE, INC., F/K/A** | § | |
| **TRILOGY SOFTWARE, INC.;** | § | |
| **VERSATA DEVELOPMENT GROUP,** | § | |
| **INC., F/K/A TRILOGY DEVELOPMENT** | § | |
| **GROUP, INC.; AND** | § | |
| **VERSATA COMPUTER INDUSTRY** | § | |
| **SOLUTIONS, INC., F/K/A TRILOGY** | § | |
| **COMPUTER INDUSTRY** | § | |
| **SOLUTIONS, INC.** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 2:07-cv-153-CE** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **SAP AMERICA, INC. AND SAP AG** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**SAP AMERICA, INC. AND SAP AG'S
SUPPLEMENTAL MOTION FOR JUDGMENT AS A MATTER OF LAW
ON DAMAGES ISSUES**

## TABLE OF CONTENTS

PAGE NO.

I.   INTRODUCTION AND RELIEF REQUESTED...............................................................1

II.  LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW..............................1

III. VERSATA CANNOT RELY ON THE ENTIRE MARKET VALUE RULE TO
     ESTABLISH AN APPROPRIATE REASONABLE ROYALTY DAMAGES CLAIM ...2

     A.   VERSATA FAILED TO PROVE CUSTOMER DEMAND FOR THE ACCUSED
          FEATURE DROVE DEMAND FOR THE ACCUSED PRODUCTS .......................................3

     B.   VERSATA FAILED TO PROVE THE EXISTENCE OF A FUNCTIONAL
          RELATIONSHIP BETWEEN THE PATENTED AND NON-PATENTED
          COMPONENTS OF SAP'S ACCUSED PRODUCTS .........................................................7

IV.  VERSATA CANNOT CLAIM ANY PRE-SUIT DAMAGES BECAUSE IT FAILED
     AS A MATTER OF LAW TO PROVE THAT IT CONSISTENTLY AND
     CONTINUOUSLY MARKED SUBSTANTIALLY ALL OF ITS 40 EMBODYING
     PRODUCTS......................................................................................................................8

V.   CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

PAGE NO.

*Cases*

*American Med. Sys. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993)...................................................................... 8

*Cornell Univ. v. Hewlett-Packard Co.*,
  No. 01-CV-1974, 2008 U.S. Dist. LEXIS (N.D.N.Y. May 27, 2008).................................... 2, 8

*Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*,
  408 F.3d 1374 (Fed. Cir. 2005)...................................................................... 8

*Maxwell v. J Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996)...................................................................... 8

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998)...................................................................... 8

*Palasota v. Haggar Clothing, Co.*,
  499 F.3d 474 (5th Cir. 2007) ...................................................................... 1

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133 (2000)...................................................................... 1

*Rite-Hite Corp. v. Kelley Co. Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc).............................................................. 2, 7

*Summit Tech., Inc. v. Nidek Co.*,
  363 F.3d 1219 (Fed. Cir. 2004)...................................................................... 1

*Statutes*

35 U.S.C. § 287(a) ...................................................................... 1, 8

*Rules*

Fed. R. Civ. P. 50...................................................................... 1

Fed. R. Evid. 702 ...................................................................... 2

## I.      INTRODUCTION AND RELIEF REQUESTED

At the close of Versata's case, Defendants SAP AG and SAP America, Inc. ("SAP")

moved for judgment as a matter of law that Versata is precluded from relying upon the entire

market value rule as the basis for its reasonable royalty claim.[1]  SAP hereby renews that motion

in this supplemental motion, and respectfully requests that this Court enter judgment as a matter

of law, pursuant to Fed. R. Civ. P. 50(a), that:

> 1) Versata is precluded from relying on the entire market value rule as the basis for its
> reasonable royalty claim; and

> 2) Versata is precluded from seeking pre-suit damages as a result of its failure to
> consistently and continuously mark substantially all of its 40 embodying pricing products
> throughout the damages period, pursuant to 35 U.S.C. § 287(a).

Versata has failed to meet its burden of proof on each issue.  Its case-in-chief is now closed and

Versata's opportunity to come forward with additional evidence closed with it.  Based on the

evidentiary record, a reasonable jury could not find in favor of Versata on either of these issues.

## II.     LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

"[A] motion for judgment as a matter of law may be made at any time before the case is

submitted to the jury."[2]  "Under Rule 50, a court should render judgment as a matter of law when

a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a

reasonable jury to find for that party on that issue."[3]

---

[1] 8/19/09 Trial Tr., Vol. B, 100:17-104:11.  Plaintiffs Versata Software Group, Inc., Versata
Development Group, Inc., and Versata Computer Industry Solutions are collectively referred to
as "Versata" herein.

[2] Fed. R. Civ. P. 50(a)(2).

[3] *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 149 (2000) (citing Fed. R. Civ. P. 50(a));
*Palasota v. Haggar Clothing, Co.*, 499 F.3d 474, 480 (5th Cir. 2007).  Because motions under
Fed. R. Civ. P. 50 are procedural matters not unique to patent law, regional circuit law
controls.  *Summit Tech., Inc. v. Nidek Co*., 363 F.3d 1219 (Fed. Cir. 2004).

**III.    VERSATA CANNOT RELY ON THE ENTIRE MARKET VALUE RULE TO ESTABLISH AN APPROPRIATE REASONABLE ROYALTY DAMAGES CLAIM**

Versata seeks over $195 million dollars in royalty damages by including in its royalty base calculation the entire market value of SAP's sales of its accused ERP and CRM products and separately sold maintenance services.  The entire market value rule considers whether a patentee may recover damages based on the value of an entire apparatus containing several features, not all covered by the patent.[4]  A patentee seeking to rely on the entire market value rule must demonstrate both that the claimed royalty base comprises the "smallest sellable unit" containing the accused feature and that the accused feature was the basis for market demand of the entire apparatus.[5]  Because Versata failed to meet either of these necessary, and independent, evidentiary prerequisites at trial, it cannot rely on a damages theory based upon the entire market value rule.[6]

First, Versata failed to limit its claimed royalty base to the smallest saleable unit that contains the accused feature.  Versata has acknowledged that requirement under *Cornell*, at the *Daubert* hearing just prior to Mr. Bakewell's testimony, when Versata's counsel declared:

> what happened there is Judge Rader struck the original damage calculation, because he went too broad, and — but then what happened is, after he narrowed the royalty base to the smallest saleable unit, he entered judgment of a damages amount, applying

---

[4] *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc); *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848, at *5 (N.D.N.Y May 27, 2008).

[5] *Rite-Hite*, 56 F.3d 1538 at 1549.

[6] SAP timely moved to preclude testimony regarding damages calculations based on the entire market value rule because Mr. Bakewell, Versata's expert on damages issues, failed to set forth the necessary economic analysis under Fed. R. Evid. 702.  *See, e.g.*, 7/7/09 SAP's Motion in Limine No. 1 to Limit Testimony of Versata's Expert, W. Christopher Bakewell (D.N. 225); 7/24/09 SAP's Reply in Support of MIL No. 1 (D.N. 258).  The Court denied SAP's Motion following a hearing on the issue.  8/19/09 Trial. Tr. Vol. A, pp. 96-97 (citations to the 8/19/09 Vol. A Trial Transcript reflect pagination in the corrected transcript).

the royalty to that base with no evidence, none, that the patented
feature drove demand for the smallest saleable unit.[7]

But rather than limit its claimed royalty to the smallest saleable unit — ERP and CRM
license sales — Versata lumped in SAP's maintenance sales, too, even though SAP sells its
maintenance in an entirely separate contract that ***not one single customer is obligated to sign***.
That most SAP customers choose to execute a maintenance contract is of no consequence — the
contract is sold separately.  As a result, Versata's cries that it "[does not] know of any other
smaller base we can go to" ring hollow.[8]

Second, and most critically, Versata failed to demonstrate that the accused hierarchy
access feature — the sole feature which Versata contends makes the difference between
infringement and non-infringement of each of the claims[9] — formed the basis for market
demand of the accused products.  In fact, the entirety of the evidence introduced at trial
demonstrated that the opposite was true.  It is undisputed that SAP's accused products contain
many non-infringing features and functions in addition to the allegedly infringing hierarchy
access feature.

### A. VERSATA FAILED TO PROVE CUSTOMER DEMAND FOR THE ACCUSED FEATURE DROVE DEMAND FOR THE ACCUSED PRODUCTS

Versata's own witnesses testified that SAP's accused products have numerous non-
infringing components and thousands of non-accused functionalities, each of which may be an
independent basis for customer demand.[10]  Versata has failed to come forward with evidence that

---

[7] 8/19/09 Trial Tr. Vol. A, 91:6-13 (Counsel for Versata).

[8] 8/19/09 Trial Tr. Vol. A, 93:11-12 (Counsel for Versata).

[9] 8/18/09 Trial Tr. Vol. A, 14:17-15:2, 41:24-42:2 (Nettles); 8/18/09 Trial Tr. Vol. B, 85:2-87:10
(Nettles).

[10] Mr. Bakewell testified that there are many components of SAP's ERP and CRM that are not
accused of infringement.  8/19/09 Trial Tr. Vol. A, 165:4-7, 167:7-22.  Mr. Bakewell also

even a single SAP customer purchased the accused products because of the accused hierarchy access feature.   Mr. Bakewell, Versata's damages expert, could not even explain what amount of demand for SAP's products was driven by non-accused features and functionality.[11]

At trial, Mr. Bakewell relied on responses to customer subpoenas as evidence that the accused hierarchical access functionality is important to SAP customers.[12]  Mr. Bakewell admitted that at least 60% of the subpoenaed SAP customers do not use hierarchical access at all, let alone in a manner that would infringe.[13]  But even with respect to the customers that did report using hierarchical accesses in some way (though not in a way that any Versata witness concludes demonstrates infringement),[14]  the fact that some customers use the hierarchy access functionality, as one of hundreds and even thousands of functionalities they also use in the accused products, does not demonstrate that hierarchy access is a basis for demand at all.

Versata and Mr. Bakewell could have determined the answer to that question, but they did not.  Tellingly, Mr. Bakewell assisted in drafting Versata's subpoena questions, and in cherry-picking the customers to subpoena, but Mr. Bakewell chose not to ask SAP customers the simple question that could have given him a foundation to opine on whether the accused hierarchy access feature forms the basis for demand — why did they purchase SAP's ERP or

---

testified that there are non-patented components even within the pricing functionality of SAP's ERP and CRM, and that these non-patented components serve a useful purpose.  8/19/09 Trial Tr. Vol. A, 167:23-170:4.  Versata's witnesses also described SAP's ERP software as a "stem-to-stern" system with thousands of functionalities.  8/17/09 Trial Tr. Vol. B, 159:25-160:6 (Dholakia); 8/17/09 Trial Tr. Vol. A, 84:10-18 (Carter).

[11] 8/19/09 Trial Tr. Vol. A, 170:5-171:3 (Bakewell).

[12] 8/19/09 Trial Tr. Vol. A, 71:6-72:21 (Bakewell).

[13] 8/19/09 Trial Tr. Vol. A, 85:2-7 (Bakewell).

[14] 8/18/09 Trial Tr. Vol. B, 73:11-24 (Nettles) (admitting that he does not know of a specific customer who has ever run hierarchical access on a single table that combines product and customer hierarchies); 8/18/09 Trial Tr. Vol. B, 122:1-13 (Nettles) (admitting that he was unsure of the precise questions included in the customer subpoenas).

CRM?[15]  The failure to ask that simple question, let alone ask whether the accused feature drove, or even contributed to, any such purchasing decision, dooms Versata's effort to rely upon the value of the entire market as a basis for its damages claim.

Having failed to offer any evidence that the accused feature drove demand for the accused products, Versata also fails in its attempts to fall back on evidence of consumer demand for Versata's own SC Pricer product as a proxy for the claimed invention.  Mr. Bakewell acknowledges embodying pricing products, such as SC Pricer, have "substantially more" functionality than the invention as claimed.[16]  Mr. Dholakia, Versata's head of pricing sales and marketing at the time of the hypothetical negotiation, testified that the advantages of Pricer included "eliminating outdated price sheets," allowing "strategic pricing policies," determining "what [is] the impact of a price change before implementing it," and allowing pricing on a disconnected laptop.[17]  Even though none of these features or functionality embody the claims-in-suit, Mr. Bakewell utterly failed to analyze, and Versata failed to proffer, any evidence of what percentage of consumer demand was attributed to any of these features in comparison to the claimed features.

Even assuming *arguendo* that consumer demand for Versata's Pricer was driven by the claimed invention, not one of the customer contracts Mr. Bakewell relies on as evidence of "real world" demand is a license for SC Pricer alone.  Instead, the contracts provide a license to SC Pricer amongst a suite of related and unrelated products.[18]  Among the set of twelve companies

---

[15] 8/19/09 Trial Tr. Vol. A, 81:16-82:16, 83:21-24 (Bakewell).

[16] 8/19/09 Trial Tr. Vol. B, 15:7-16:11 (Bakewell).

[17] 8/17/09 Trial Tr. Vol. B, 105:17-109:19 (Dholakia).

[18] 8/19/09 Trial Tr. Vol. A, 60:25-61:19 (Bakewell).

for which Mr. Bakewell claims Pricer drove sales,[19] he failed to analyze the relative proportion

of consumer demand driven by other, non-embodying products such as SC Pricer Maintenance.[20]

This gap in the analysis is particularly significant given that "ease of maintenance" was one of

three features Versata touted when attempting to sell its pricing software.[21]

The inadequacy of Versata's purported evidence of consumer demand is even more

apparent when the twelve contracts Mr. Bakewell described as "additional suite sales that

included Pricer" are examined.[22]  Although each of these twelve customers also licensed

Versata's configuration software,[23] Mr. Bakewell failed to offer any analysis of demand for

Versata's configuration products as a driver of sales, in comparison with the pricing functionality

of the claims.  For example, CMP Media licensed fourteen different software products, only one

of which — SC Pricer — is an embodying pricing product, yet Mr. Bakewell offers no analysis

of the 13 non-Pricer components.[24]  Similarly, Alltel licensed three different suites of products:

Commerce Station, Selling Chain, and Buying Chain,[25] but Versata presented no evidence

measuring customer demand for Pricer among these different modules.  Mr. Bakewell's

---

[19] 8/19/09 Trial Tr. Vol. A, 110:14-115:1 (Bakewell).

[20] Nine of the 12 companies listed on Mr. Bakewell's demonstrative entitled "Trilogy License Agreements: Pricer Driven Sales Prior to October 1998" also licensed SC Pricer Maintenance. According to Trilogy's Response to SAP Interrogatory No. 3, SC Pricer Maintenance is not an embodying pricing product.  DX 2213 at 45-46.

[21] 8/17/09 Trial Tr. Vol. B, 110:10-111:11 (Dholakia).

[22] 8/19/09 Trial Tr. Vol. A, 115:5-116:25 (Bakewell) (Versata's Counsel indicated PX 513, 514, 518, 515, 539, 542, 559, 1336, 580, 576, 572, 577 reflected these customer agreements.).

[23] See PX 513, 514, 518, 515, 539, 542, 559, 1336, 580, 576, 572, 577.

[24] See PX 520 (CMP Media contract licensing SC Pricer, SC Commission, SC Commission Dashboard, SC Config, SC Report, SC Catalog, SC Replicator, SC Backbone, SC Contract, SC Promotion).

[25] See PX 515 (Alltel contract licensing Commerce Station Catalog, Commerce Station Shopping Cart, Commerce Station Quote, Buying Chain Enterprise Edition, SC Config, SC Pricer, Trilogy Backbone (Java), Trilogy FFC-HTML, Trilogy Replicator (COM), Trilogy Replicator (Java), Trilogy Report).

conclusory testimony that Pricer was "important"[26] is wholly inadequate to demonstrate the necessary evidentiary basis to advance a theory of damages predicated on the entire market value rule.

Further undermining Mr. Bakewell's conclusory testimony of consumer demand for Versata's own pricing products are Versata's own documents demonstrating that Trilogy's patent-embodying Pricer product was never successful in the marketplace.  For example, Mr. Liemandt, Verstata's CEO, admitted in April 1998 that the company "bet big on Pricer and it failed to deliver."[27]  He continued, "Poor value proposition into SAP accounts.  Too maintenance/technical not enough business benefits."[28]  In a March 2000 email, Mr. Carter, the inventor of the pricing patents, admitted that "*pricing is not driving sales on its own*." [29]  He further described "two of the biggest eCommerce deals we've had recently, Ford and Sun. Neither were Pricer led deals."[30]

### B.     VERSATA FAILED TO PROVE THE EXISTENCE OF A FUNCTIONAL RELATIONSHIP BETWEEN THE PATENTED AND NON-PATENTED COMPONENTS OF SAP'S ACCUSED PRODUCTS

Versata also failed to adduce evidence that the accused feature as well as the non-accused features function together in some manner as to produce the desired end product or result.[31]  Mr. Bakewell offered no opinion whether the thousands of functional components in the accused products are functionally related to the accused hierarchy access feature.[32]

---

[26] 8/19/09 Trial Tr. Vol. A, 116:3-9 (Bakewell).

[27] DX 824 at 1.

[28] DX 824 at 1.

[29] DX 1083 at 2 (emphasis added).

[30] DX 1083 at 2.

[31] *Rite-Hite Corp.*, 56 F.3d at 1550; 8/19/09 Trial Tr. Vol. A, 166:4-6, 166:18-21 (Bakewell).

[32] 8/19/09 Trial Tr. Vol. A, 166:4-6, 166:18-21 (Bakewell).

There is insufficient evidence from which any reasonable jury could conclude that the accused hierarchy access feature drove demand for the accused SAP products and associated maintenance services.  There is not even any reliable, probative evidence that the claimed invention drove sales of Versata's own products.  Versata's failure of proof is fatal to its reliance on the entire market value of SAP's ERP and CRM for its damages calculation.  Versata cannot, as a matter of law, recover damages under the entire market value rule.[33]

## IV.    VERSATA CANNOT CLAIM ANY PRE-SUIT DAMAGES BECAUSE IT FAILED AS A MATTER OF LAW TO PROVE THAT IT CONSISTENTLY AND CONTINUOUSLY MARKED SUBSTANTIALLY ALL OF ITS 40 EMBODYING PRODUCTS

Versata has admitted that SAP had no actual notice of the asserted patents before Versata filed the instant lawsuit.[34]  Therefore, in order to claim pre-suit damages, Versata bore the burden to prove by a preponderance of the evidence that it complied with the marking obligation set forth in 35 U.S.C. § 287(a).[35]  The law is clear — the burden of proving compliance with § 287(a) rests on Versata and never shifts to SAP.[36]  Versata, however, failed to present sufficient evidence from which the jury could conclude that substantially all of its embodying pricing products were consistently and continuously marked throughout the damages period, as required by the statute.[37]

---

[33] *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1379 (Fed. Cir. 2005).  *See also Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 U.S. Dist. LEXIS 41848 (N.D.N.Y. May 27, 2008).

[34] Versata admitted that it did not provide SAP with actual notice of infringement of the asserted patents before April 20, 2007.  DX 2168 (Versata's response to SAP's RFAs Nos. 32 and 33).

[35] *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998); *Maxwell v. J Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *American Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537-38 (Fed. Cir. 1993).

[36] *Maxwell*, 86 F.3d at 1111 ("As the patentee, Maxwell had the burden of pleading and proving at trial that she complied with the statutory requirements [of § 287(a)].").

[37] *Maxwell*, 86 F.3d at 1111; 35 U.S.C. § 287(a).

Versata claims at least 28 different products embody its pricing patents.[38]  Versata, however, failed to offer proof of consistent or continuous marking of any of those products. Instead, Mr. Patrick Nichols, Versata's only witness on the topic of marking, testified generally about a "procedure" Versata had in place to mark its products via the "Trilogy Build System."[39]

Versata seeks to fall back on its Build System, but offered no evidence that the Trilogy Build System reliably and consistently marked embodying products.  Mr. Nichols analogized the Trilogy Build System to an assembly line in a factory,[40] and testified that if marking information was contained in the factory, "then all products that embody that particular patent at that point forward include that patent marking."[41]  Versata, however, has introduced no evidence that marking information was actually contained in the Trilogy Build System for all embodying products.

Versata's evidence instead shows the exact opposite — the Trilogy Build System did not contain the patent-product association for all embodying products.  Mr. Nichols relied on PX 1444, a spreadsheet listing Versata products and associated patent numbers, as evidence demonstrating that the embodying pricing products were marked with both the '400 and '350 patents.  As Mr. Nichols acknowledged, PX 1444 did not include entries for all 28 of the embodying pricing products.[42]  In fact, PX 1444 only contains entries for three embodying

---

[38] *See* DX 2213 at 45-46 (listing 28 embodying pricing products).  *See also* 8/18/09 Trial Tr. Vol. B, 131:8-10 (Nichols) ("[W]e offered embodying products of the '400 patent in many different marketing names over the years, probably 40, plus or minus.").  Of these products, at least 15 products have been sold throughout the damages period and continue to be offered for sale today. 8/18/09 Trial Tr. 156:4-158:11 (Nichols).

[39] 8/18/09 Trial Tr. Vol. B, 127:19-129:7 (Nichols).

[40] 8/18/09 Trial Tr. Vol. B, 127:19-128:13, 151:14-152:1, 162:10-21 (Nichols).

[41] 8/18/09 Trial Tr. Vol. B, 151:23-25 (Nichols).

[42] 8/18/09 Trial Tr. Vol. B,168:3-169:3 (Nichols) (admitting that JavaPricer is not listed in PX1444).

pricing products.[43]  At best, therefore, Versata only offered evidence that there was input information to the "factory" for only three of 28 embodying products.  The Trilogy Build System "factory" did not "contain" marking information for all of the embodying products.

The output of the Trilogy Build System "factory," the splash screens contained in PX 1425, also fail to establish that Versata consistently and continuously marked substantially all of its products.  Mr. Nichols showed the jury a single 2002 screenshot for a single product, MCC Pricer, and explained that the splash screen appears during installation.[44]  Mr. Nichols admitted that Versata's production of splash screens did not cover all years, all patents, or all products.[45]  All of the 2003 and 2004 splash screens, and most of the 2005 splash screens, are missing the '350 patent.[46]  A summary of the splash screens contained in PX 1425 is described below.

| | | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|---|---|
| Pricing products with marked splash screens | '350 | 0 | 0 | 0 | 0 | 1 MCC Pricer | 1 MCC Pricer | 2 MCC Pricer, Automotive Pricer |
| | '400 | 0 | 1 MCC Pricer | 1 MCC Pricer | 1 MCC Pricer | 1 MCC Pricer | 1 MCC Pricer | 2 MCC Pricer, Automotive Pricer |

---

[43] PX 1444 includes entries for only SC Pricer, SC Pricing Analysis, and MCC Pricer.  PX 1444 is dated September 2003.  There are no entries for any other embodying pricing products, including the 11 products that Mr. Nichols testified were delivered to customers via the Trilogy Build System since 2002 (eCoupon, WebPricer, SC Rating, Trilogy Pricing Server, SAP Pricing Server, Pricer, PriceBuilder, MCC PriceBook, JavaPricer, Internet Pricing Server or Customer Pricer).

[44] 8/18/09 Trial Tr. Vol. B, 132:25-135:17 (Nichols); PX 1425 at VER0001820004.

[45] 8/18/09 Trial Tr. Vol. B, 158:15-161:7 (Nichols).

[46] 8/18/09 Trial Tr. Vol. B, 153:9-155:1 (Nichols); PX 1425 at VER0001829433-34, VER0001829687-88, VER0001829740-41.

Trilogy's excuse for its failure to bring its proof of marking to trial — that it is not obligated to keep copies of splash screen for every product, just like Ford would not be obligated to demonstrate that it marked every single Ford Taurus it sold — is a red herring.[47]  Versata did not sell a single product — it claims 28 different products embody its pricing patents.

Further, Mr. Nichols testimony about general marking practices is not a substitute for the documentary evidence demonstrating that splash screens for each embodying product were, in fact, marked.[48]  In the absence of any explanation as to why Versata could not produce the splash screens, in order to prove the contents of the splash screens — including whether or not each splash screen contained the '400 and '350 patents — Versata was obligated to come forward with those splash screens.  Mr. Nichols testified that the Trilogy Build System can be recreated,[49] and splash screens for the products it sells today can be reproduced.[50]   But Versata did not reproduce those splash screens in spite of its evidentiary burden.  Given these facts, Mr. Nichols' general testimony about the nature of the Trilogy Build System is insufficient as a matter of law to demonstrate that Versata consistently and continuously marked substantially all 28 different embodying products.

Versata is obligated, as a matter of law, to present evidence that it marked substantially all of its products, and that it did so in a continuous and consistent manner.  Because Versata has not come forward with sufficient evidence from which a reasonable jury could conclude that it

---

[47] 8/18/09 Trial Tr. Vol. B, 162:10-21 (Nichols).

[48] Fed. R. Evid. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.").  Jack V. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 1002.03 (2d ed. 1997) ("The rule promotes the prevention of fraud because it allows the parties to examine documents for any defects or alterations, and it dampens any desire to color testimony as to the contents of documents, since any testimony is subject to immediate corroboration.")).

[49] 8/18/09 Trial Tr. Vol. B, 136:3-5 (Nichols).

[50] 8/18/09 Trial Tr. Vol. B, 155:11-14 (Nichols).

carried its burden of proof on this issue, judgment as a matter of law denying Versata pre-suit damages must be entered.

Because Versata cannot demonstrate that it complied with the marking requirements of 35 U.S.C. § 287(a) (hereinafter referred to as "the marking statute"), Versata should be precluded from recovering damages prior to April 20, 2007, the date it filed suit against SAP.  The burden of showing compliance with the marking statute rests firmly on Versata.  As an element of its case for six years of past damages, Versata must adduce evidence sufficient to show that substantially all patented articles were consistently and continuously marked.  More than 21 months of discovery on the issue of marking reflects that, for three independent reasons, Versata has not met, and cannot meet, this burden.

First, in response to SAP's Third Interrogatory, Versata identified all versions of 28 products it claims embodied the '400 and '350 Patents (the "Pricing Patents").  Even though Versata has admitted that it would still possess any splash screens used to mark embodying products it still sells, it has failed—after repeated prodding by SAP in discovery and meet-and-confer—to produce such splash screens for all but three of these products.

Second, even if Versata could adduce evidence that substantially all of the embodying pricing products were tagged with the numbers of the patents-in-suit using splash screens — which it has not — Versata's splash-screen approach to marking is deficient as a matter of law. The purpose of the marking statute is to provide notice ***to the public*** that an article is patented. Listing relevant patent numbers on a splash screen that appears ***only*** during installation of the product provides notice only to the person installing the software, not to the end user.  It is precisely this group, users of the software, who the cases recognize must be made aware of the applicable patents.

## V.     CONCLUSION

Because Versata failed to set forth a sufficient evidentiary basis from which a reasonable jury could conclude that Versata satisfied the requirements of proving damages under the entire market value rule, or that Versata complied with the marking requirements of 35 U.S.C. § 287(a), SAP respectfully requests that the Court enter judgment as a matter of law in favor of SAP on these issues.

Dated:  August 25, 2009

Respectfully Submitted,

By: _____/s/ Nicholas H. Patton_____
   *(with permission William P. Nelson)*
Nicholas H. Patton
Texas Bar No. 15631000
nickpatton@texarkanalaw.com
**PATTON, TIDWELL & SCHROEDER, LLP**
4605 Texas Blvd.
P.O. Box 5398
Texarkana, Texas 75505-5398

Patricia L. Peden (*pro hac vice*)
ppeden@pedenlawfirm.com
**LAW OFFICES OF PATRICIA L. PEDEN**
610 16th Street, Suite 400
Oakland, CA 94612

Lloyd R. Day (*pro hac vice*)
 DayL@howrey.com
James R. Batchelder (*pro hac vice*)
 BatchelderJ@howrey.com
Paul S. Grewal (*pro hac vice*)
 GrewalP@howrey.com
William P. Nelson (*pro hac vice*)
 NelsonP@howrey.com
Mario Moore *(pro hac vice)*
 MooreMario@howrey.com
**HOWREY LLP**
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Tel:  (408) 873-0110
Fax: (408) 873-0220

**ATTORNEYS FOR DEFENDANTS
SAP AMERICA, INC. AND SAP AG**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U. S. First Class Mail.

Dated:  August 25, 2009

*/s/ William P. Nelson*
_____

William P. Nelson
