UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VERSATA SOFTWARE INC., et al.,<br>    *Plaintiffs,* | §<br>§<br>§ | |
| v. | § | CASE NO. 2:07-CV-153 CE |
| | § | |
| SAP AMERICA, INC. and SAP AG,<br>    *Defendants*. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

The following memorandum further explains the basis for the Court granting Defendants SAP America, Inc.'s and SAP AG's (collectively, "SAP") Motion to Exclude the Expert Testimony of Neeraj Gupta, Christopher Bakewell, and Roy Weinstein as it relates to the proposed reasonable royalty analysis (Dkt. No. 459). The Court heard argument on Defendants' motion at a hearing on May 6, 2011, and issued an order granting the motion on May 7, 2011 (Dkt. No. 507).

**I.    Factual Background**

Following the August 2009 trial in this case, the jury found that SAP directly infringed claims 31, 35, and 36 of U.S. Patent No. 5,878,400 ("the '400 patent"), and claims 26, 28, and 29 of 6,553,350 B2 ("the '350 patent"). The jury also found that SAP induced and contributed to the infringement of claim 29 of the '350 patent. In addition, the jury found that the asserted claims of the '400 and '350 patents were not invalid for failure to satisfy the best mode requirement. The jury awarded Plaintiffs Versata Software, Inc., Versata Development Group, and Versata Computer Industry Solutions, Inc. (collectively "Versata") damages in the amount of $138,641,000. (*See* Dkt. No. 318 (Verdict Form)).

Following the August 2009 trial, the Court granted SAP's motion for judgment as a

matter of law regarding non-infringement of the '400 patent. (Dkt. No. 409). The Court held that the '400 patent requires that the accused SAP products "as made and sold, contain computer code or program instructions sufficient to perform the operations recited in the claims without additional modification or configuration, or the addition of further program instructions." (*Id.* at 3.) Because Versata's expert evidence failed to show that SAP or any SAP customer had used the accused product in an infringing manner, the Court ruled Versata's expert evidence failed to prove direct infringement of the '400 patent. (*Id.* (citing *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)). The Court, however, concluded that the record evidence was sufficient to support the jury's finding of infringement of the asserted claims of the '350 Patent.

After granting SAP's motion for judgment as a matter of law regarding non-infringement of the '400 Patent, the Court granted SAP's motion for a new trial on damages for the '350 patent. Specifically, the Court determined that "[i]n light of the Federal Circuit's recent decisions on damages, including *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), and *Uniloc USA, Inc. v. Microsoft Corp.*, No. 03-CV-0440 (Fed. Cir. January 4, 2011), the court is persuaded that it erred when it admitted Mr. Bakewell's testimony and his damages model." (Dkt. No. 412.) Based on this guidance, the Court held that Versata's expert testimony was deficient and could not support the jury's verdict. (*Id.* at 1 (The admission of Mr. Bakewell's testimony "affected SAP's substantial rights.").)

In contrast to the '400 patent, the '350 patent requires only the capability to practice the asserted claims. (Dkt. No. 409, at 4 (The '350 patent requires "computer program instructions *capable of* performing the claimed invention.") (emphasis in original).) Specifically, the asserted claims of the '350 patent require the capability to run hierarchical access on both a product group

hierarchy and an organizational group hierarchy to calculate a single price. Because the '400 patent was at issue in the August 2009 trial, Versata's claimed damages were connected to the actual use of the accused products.

Regarding the damages model in dispute in the second trial, Versata has employed two additional damages experts—Mr. Gupta and Mr. Weinstein—to augment Mr. Bakewell's revised reasonable royalty analysis. Based on the Court's review of Versata's experts' reports, the Court concludes that Versata's experts have not followed this Court's or the Federal Circuit's guidance. Rather, their reasonable royalty analysis relied on speculation and guesswork, and was divorced from the factual and economic realities of this case. Accordingly, the respective reports and testimony regarding the revised reasonable royalty analysis was excluded from the jury trial.

## II. Legal Standard

Federal Rule of Evidence ("Rule") 702 requires that any expert be qualified to testify by "knowledge, skill, experience, or education":

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience or education, may testify thereto in the form of an opinion or otherwise, if
>
> (1) the testimony is based upon sufficient facts or data,
>
> (2) the testimony is the product of reliable principles and methods, and
>
> (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." (*Id.*) When faced with a proffer of expert testimony, it is the trial judge's responsibility to determine, at the outset, whether the expert is proposing to testify to expert knowledge and whether such testimony will assist the trier of fact to understand or

determine a fact in issue. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). In this regard, the trial judge acts as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *IP Innovation v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) ("The district courts act as gatekeepers tasked with the inquiry into whether expert testimony is not only relevant, but reliable. This court must exclude testimony that does not meet the requirements of Rule 702.").

As the Court discussed when it granted SAP's motion for a new trial on damages for the '350 patent, the Federal Circuit has recently addressed the calculation of a reasonable royalty and the standards by which expert witnesses should make this calculation. In particular, the Federal Circuit has emphasized the need for experts to connect their theories to the actual facts of the case at hand. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) ("The bottom line … is that one major determinant of whether an expert should be excluded under Daubert is whether he has justified the application of a general theory to the facts of the case."); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (stating that, to be admissible, expert testimony opining on a reasonable royalty rate must "carefully tie proof of damages to the claimed invention's footprint in the market place."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1323-1339 (Fed. Cir. 2009) ("[W]e are left with the unmistakable conclusion that the jury's damages award is not supported by substantial evidence, but is based mainly on speculation and guesswork."). Accordingly, the Federal Circuit stated in *Uniloc* that "[t]he Supreme Court and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate." 632 F.3d at 1320.

4

### III. Discussion and Analysis

Versata's proposed reasonable royalty model is based on the opinions of three different experts. After reviewing the experts' reports, the Court finds that Versata is seeking a 13% royalty rate on the entirety of SAP's revenue, as it is applied to each SAP licensed user. Versata argues that SAP's 13% figure never appears in Mr. Bakewell's Report or Mr. Weinstein's Report and that SAP is playing mathematical games. The Court finds that it is Versata that is attempting to play mathematical games. Although it is true that a 13% figure is not literally stated in the expert's report, it cannot be disputed that the final reasonable royalty rate is 13% because Versata's expert divides the stated 26% royalty rate in half, and then multiples the total revenue for Tier 1 seats to reach the final damages number.

To be sure, Mr. Bakewell divides the total revenue by number of seats to obtain a per-seat figure, but Mr. Weinstein multiplies his 13% royalty by the per-seat figure to obtain a per-seat royalty, and then multiplies the per-seat royalty by the number of seats. With the same number of seats appearing in both the numerator and denominator of the multiplied numbers, the division and multiplication steps cancel each other out, meaning that Mr. Weinstein's 13% royalty rate is being applied to SAP's Total Revenue for its Tier 1 customers. In other words, Versata's experts' analysis utilizes the Entire Market Value Rule in violation of Federal Circuit precedent and this Court's prior rulings because the reasonable royalty is nothing more than an unsupported percentage of SAP's total revenue.

Specifically, Mr. Gupta's analysis focuses entirely on apportioning the alleged contribution of the patented invention to Versata's product, not SAP's. That is, at no time does any expert attempt to apportion the contribution of the patented invention to SAP's product. Instead, Mr. Weinstein simply accepts Mr. Gupta's data without comment, and assumes that the patented features will provide the exact same value to SAP's customers as they do to Versata's

customers. This leap from apples (Trilogy's Pricer product) to oranges (SAP's accused products) is unsupported and improper. For at least these reasons, the Court finds that Versata's experts failed to perform an appropriate apportionment analysis and utilized the Entire Market Value Rule in violation of Federal Circuit precedent and this Court's prior rulings.

For Tier 2 customers, Versata's experts utilized a similar methodology. Rather than apply a separate analysis for Tier 2 customers, Versata simply multiples its $70 royalty for each seat found by 28% to arrive at $20 per Tier 2 seat. This $20 per seat is then multiplied by the number of Tier 2 seats (2,521,862) to arrive at a Tier 2 royalty of $50 million. Versata's Tier 2 royalty amounts to a 3.6% royalty on SAP's entire Tier 2 revenue. Together, the Tier 1 royalty of $176 million and the Tier 2 royalty of $50 million comprise Versata's entire $226 million royalty demand. As with the Tier 1 analysis, the Court finds that the Tier 2 analysis utilizes the Entire Market Value Rule because it is based solely on a percentage of the Tier 1 analysis, which this Court concludes is nothing more than an unsupported percentage of SAP's total revenue.

In summary, the Court finds that Versata's experts' analysis fails to meet the basic criteria established by the opinions of both the Federal Circuit and this Court. *Uniloc*, *ResQNet*, and *Lucent* indicate that a damages model must be based on sound economic principles and reliable data, and that rules of thumb and other methods of speculative approximation should be excluded. For the reasons stated above, Versata has failed to meet this established criteria. Accordingly, the experts' respective reports and testimony regarding the revised reasonable royalty analysis was excluded from the jury trial. This included the reports and testimony of Mr. Gupta, Mr. Bakewell, and Mr. Weinstein as they related to the revised reasonable royalty analysis.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTED Defendants' motion and excluded the

expert testimony of Neeraj Gupta, Christopher Bakewell, and Roy Weinstein as it related to the revised reasonable royalty analysis.

    It is so ORDERED.

    SIGNED this 9th day of September, 2011.

                                    CHARLES EVERINGHAM IV
                                    UNITED STATES MAGISTRATE JUDGE