IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VERSATA SOFTWARE INC., et al.,<br>*Plaintiffs*, | §<br>§<br>§ | |
| v. | § | CASE NO. 2:07-CV-153 CE |
| SAP AMERICA, INC. and SAP AG,<br>*Defendants*. | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Versata Software, Inc., f/k/a Trilogy Software, Inc. and Versata Development Group, f/k/a Versata Development Group, Inc., (collectively, "Plaintiff" or "Versata") motions for a permanent injunction. (Dkt. Nos. 347 and 535.)  Defendants SAP America, Inc. and SAP AG (collectively, "Defendants" or "SAP") oppose the motion for permanent injunction.  The Court held full evidentiary hearings on the issue of a permanent injunction on March 9, 2010 and June 7, 2011.  In their response, Defendants request a 90 day compliance period should the Court decide an injunction is warranted.  Also pending before the Court is Defendant's motion to strike Versata's equitable claims as sanction for Versata's violation of the March 6, 2008 Protective Order and February 26, 2008 Order. (Dkt. No. 144.) The Court held an evidentiary hearing on this issue on May 14, 2009.  The Court has carefully considered the parties' submissions, the record, and the applicable law.  For the following reasons, Versata's motion for a permanent injunction is GRANTED.  The Court further finds that Versata's attorneys violated the Protective Order in this case and stays the injunction pending the disposition of any appeal.

## I. BACKGROUND

In this case, Versata sought compensatory damages from SAP for patent infringement. On August 26, 2009, a jury decided that SAP had infringed United States Patent No. 6,553,350 B2 ("the '350 patent") and that none of the asserted claims of the patent were invalid. On May 13, 2011, a jury determined that SAP's modified products infringe the '350 patent and awarded $260,000,000 in lost profits damages and $85,000,000 as a reasonable royalty. The issues presented before the Court relate to the scope of the injunction, the terms of the injunction, and whether Defendants should be entitled to a stay of the injunction pending the disposition of any appeal.

## II. LEGAL STANDARD

The Patent Act provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A permanent injunction is appropriate when a four-part test is satisfied:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

### III. DISCUSSION

#### A. Permanent Injunction

Bearing these factors in mind, the Court now turns to the facts of this case to assess the propriety of permanent injunctive relief.  Versata contends that all four of the *eBay* factors point in favor of granting an injunction.  SAP disagrees and argues that no injunction should issue.

##### 1. Irreparable Injury

Versata has demonstrated irreparable injury.  The best case for obtaining a permanent injunction often occurs when the plaintiff and defendant are competing in the same market.  In that context, the harm in allowing the defendant to continue infringing is the greatest.  This Court has recognized the high value of intellectual property when it is asserted against a direct competitor in the plaintiff's market.  "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee 'has suffered an irreparable injury.'" *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (citations omitted).  At the time that SAP first introduced the infringing product into the market, Versata marketed and sold the "Pricer" family of products that embody the patented invention.  Versata still offers the "Pricer" family of products for sale.  Thus, it cannot be reasonably disputed that Versata is a direct competitor of SAP.  Moreover, as indicated by the jury's award, there has been a loss of market share, lost profits, and potential revenue to Defendants in the past by Defendants' acts of infringement, and the Court finds that there will likely be such loss in the future.

Defendants respond that there is no evidence of actual, ongoing competition between the parties in any market for pricing software because of Versata's diminished presence.  But this

position is untenable given that the Pricer products embodying the '350 patent remain available for sale. Granted, Versata concedes that it poses far less of a competitive threat to SAP today than it did prior to SAP's sales of the infringing product. Notwithstanding, the Court finds that the evidence establishes that Versata's diminished presence was not "voluntary" and by no means is an indication that Versata has ceased competing with SAP. Instead, it indicates that Versata has suffered and will continue to suffer irreparable harm if an injunction is not issued. Indeed, if SAP's version of the facts were accepted, an infringing competitor could immunize itself from the possibility of injunctive relief simply by driving the patentee competitor completely out of the relevant market. This is contrary to the notion that an infringer "should not be permitted to prevail on a theory that successful exploitation of infringing technology shields a party from injunctive relief." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (citation omitted). Accordingly, the Court finds that Versata will suffer irreparable injury absent an injunction.

### 2. Inadequate Remedies at Law

Versata has also demonstrated the inadequacy of legal remedies. It is true that the jury awarded a damage verdict based upon acts of direct infringement. Those damages, however, are designed to compensate Versata fairly and reasonably for its past injury. Although future damages in lieu of an injunction may compensate Versata for an *approximate* loss, such approximation does not make future damages adequate in the sense that they are a suitable proxy for injunctive relief. As discussed above, Versata makes and sells products and has a presence in the relevant market. Versata has name recognition, goodwill, and market share in the relevant market. The loss associated with any of these effects is particularly difficult to quantify. *See i4i*,

598 F.3d at 862. Difficulty in estimating monetary damages is evidence that remedies at law are inadequate. *Id.*; *Broadcom,* 543 F.3d at 703-04. Further, Versata has pursued a strategy of exploiting the '350 patent for its own business advantage; it has licensed the patent sparingly and has not granted licenses to the '350 patent to business competitors outside of litigation settlements. As noted by SAP, it appears that not one of the 114 other identified competitors in the relevant market is a licensee to Versata's pricing patents. (Dkt. No. 361 at 18.) Thus, the inability to calculate Versata's future loss with reasonable precision makes legal remedies inadequate in this case. *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (noting that in view of a patentee's right to exclude, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty). Accordingly, the threat of future infringement exists and an injunction against future acts of infringement is the proper remedy to prevent future infringement.

### 3. Balance of Hardships

The "balance of hardships" assesses the relative effect of granting or denying an injunction on the parties. *See i4i*, 598 F.3d at 862. Absent an injunction, Versata will continue to suffer irreparable injury to its business, future opportunities, goodwill, potential revenue, and the very right to exclude that is the essence of the intellectual property at issue. Although an injunction will interfere with Defendants' ability to sell their competing products, the harm to Versata is significant. The Court finds that Defendants' actions relating to SAP's inclusion of the infringing technology bundled into its software at no additional cost have impacted Versata's market share and its ability to sell its products.

The Court further finds that Defendants will not suffer any appreciable harm from an injunction that could outweigh Versata's harm from continued infringement. The Defendants are larger than Versata, more diversified, and sell many different products. Accordingly, the Court has considered the balance of hardships and finds that the balance of hardships favors Versata in this case.

### 4. Public Interest

The question presented by this factor is whether the public interest would be disserved by an injunction. The "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863. The public has an interest in a strong patent system and it is generally in the public interest to uphold patent rights against an adjudicated infringer. *See id.* Permanent injunctions help serve that interest.

In this case, Defendants argue that Versata's delay in the bringing suit weighs against issuing an injunction. The Court disagrees with SAP characterization of the facts of this case and finds that any harm to the public will be minimized by the narrowly tailored scope of the injunction, which only prohibits future acts of infringement and does not remove the already sold infringing products from the marketplace. Accordingly, after considering the traditional equitable factors, the Court concludes that a permanent injunction is proper in this case.

Thus, the Court GRANTS Versata's request for a permanent injunction.

### B. Scope and Terms of the Injunction

Under Federal Rule of Civil Procedure 65(d), an injunction must state the reasons it issued, "state its terms specifically," and "describe in reasonable detail … the act or acts

restrained or required." Fed. R. Civ. P. 65(d). "[T]he scope of the injunction remains that which is necessary to deter future infringement." *Nat'l Instruments Corp. v. Mathworks, Inc.*, 2003 WL 24049230, at *5 (E.D. Tex. June 23, 2003) (Ward, J.), *aff'd* 113 Fed. Appx. 895 (Fed. Cir. 2004).

SAP contends that Versata's Proposed Injunction (Dkt. No. 535-1, Exhibit A (the "Proposed Injunction")) is impermissibly overbroad and vague for four reasons. Specifically, SAP contends that Versata's Proposed Injunction: (1) improperly both requires SAP to alter already-purchased products, and enjoins SAP from providing purchasers of those products with maintenance and access to already-purchased products that this Court has ruled to be licensed; (2) contains numerous undefined terms that do not provide SAP with sufficient notice as to the scope of the Proposed Injunction, and likely enjoin non-infringing activities; (3) contains bans on contributory or induced infringement for patent claims as to which Versata dropped such allegations before trial; and (4) provides SAP only a 30-day period of compliance, as opposed to the parties' prior agreement that provided SAP with a more reasonable 90-day period. Each of these reasons will be addressed in more detail below.

### 1. SAP Will Not be Required to Completely Remove and/or Completely Disable the Functionality in Software Sold Pre-verdict, but Will be Required to Completely Remove and/or Completely Disable the Functionality in Software Where it Collects a Maintenance Fee or Sells a New Seat Post-verdict.

The parties' dispute as it relates to the first factor is directed to two inter-related issues. First, whether SAP should be required to completely remove and/or completely disable the functionality in all software, including software sold before the jury verdict. Second, whether SAP should be allowed to continue to sell seats and collect maintenance payments—post-

verdict—for software that was sold pre-verdict but still includes the functionality that the jury found to infringe.

Regarding the first issue, SAP argues that the Proposed Injunction, as presently drafted, would require SAP to disable the infringed functionality "in the possession of (a) any customer, end-user, distributor, or consultant in the United States." (Proposed Injunction, at 2 (emphasis added)). Versata's Proposed Injunction goes on to state that the accused functionality "shall not be enabled, or be capable of being enabled, in the United States in any product." SAP contends that this request directly contradicts this Court's prior instructions and would permit Versata a double recovery. Specifically, SAP suggests that the Court recognized in its Final Jury Instructions during the damages trial, the jury's damages assessment compensates Versata for past infringement of SAP's original and modified products and creates a "license SAP to use the '350 Patent for those users." Trial Tr. May 12, 2011, PM Session at 81:15-20 ("You have heard evidence that SAP modified its products in May 2010 and that it did not require prior users to implement the modified product. Your damages award will compensate Versata for damage resulting from that infringement and will license SAP to use the '350 patent for those users."). SAP further argues that the Court also recognized that it would be improper to require SAP to "disable" the accused functionality for already-sold products, which would be licensed under the jury's damages assessment. *Id.* at 81:21-23 ("You should not infer that SAP was required to disable the infringing functionality because of the prior determination of infringement."). The Court finds SAP's argument persuasive.

Regarding the second issue, SAP's argues that because existing products have been licensed under the jury's damages assessment, maintenance (or technical support) for those

8

customers should also be held licensed. That is, SAP contends that any ban on SAP's service of its licensed customers would likewise be impermissibly overbroad and contradict this Court's previous findings, as would be requiring SAP to provide technical support for free. SAP further argues that maintenance payments are not ongoing payments for pre-existing software, but instead are for (1) technical support and bug fixes, and (2) new, interim software releases that would comply with any injunction issued by this Court. Thus, SAP argues that maintenance payments do not provide SAP ongoing revenue for past infringements, and should not be the subject of any injunction. SAP also argues that permitting existing customers to add additional users (so-called "seats") does not involve providing the customer with new software and is not a new, unlicensed act. SAP concludes that an injunction of proper scope would enjoin the infringing capabilities only in connection with products that, in the future, SAP makes, uses, or sells. The Court disagrees with both of these arguments.

The Court agrees with Versata that this future revenue is associated with future acts of infringement and is not "licensed" under the jury's damages award. For example, SAP's future sales of additional "seats" (*i.e.*, individual user licenses) to the infringing products constitute a future licenses to the infringing products. Versata correctly argues that these license revenues are outside the scope of the jury's damages assessment. Similarly, Versata contends that SAP's ongoing revenue stream from maintenance associated with the infringing products constitutes products. That is, Versata argues that until SAP removes the infringing capabilities from a given customer's software, such revenue is associated with future infringing activity that should be enjoined. The Court agrees and finds that enjoining SAP from deriving future revenue from unmodified, infringing products is entirely proper. The jury's verdict does not compensate

Versata for future infringing activity, nor does the verdict grant SAP a license to continue to generate revenue for the life of the patent-in-suit.

It is well within this Court's authority to enjoin these new, unlicensed acts of infringement by requiring SAP either to disable the infringing capabilities in SAP's infringing products or, alternatively, to stop deriving future revenues from these products until the infringing capabilities are removed. *See Tivo, Inc. v. Echostar Commc'ns Corp.*, 2011 U.S. App. LEXIS 8142, at *49 n.9 (Fed. Cir. April 20, 2011) (*en banc*) (recognizing that the Federal Circuit has "repeatedly stated that district courts are in the best position to fashion an injunction tailored to prevent or remedy infringement."); *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1317 (Fed. Cir. 2004) ("[A]s a general proposition district courts should have wide latitude in framing injunctions to meet particular circumstances."); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 945 (Fed. Cir. 1992) (holding that 35 U.S.C. § 283 "grants the district courts broad discretion in determining whether the facts of a case warrant an injunction and in determining the scope of the injunctive relief."). Accordingly, the Court concludes that SAP will not be required to completely remove and/or completely disable the functionality in software sold pre-verdict, but will be required to completely remove and/or completely disable the functionality in software where it collects a maintenance fee or sells a new seat post-verdict.

### 2. The Terms of the Injunction Will Provide Fair Notice as to the Precise Scope of the Enjoined Conduct.

It is axiomatic that an enjoined party must be given fair notice as to the precise scope of its enjoined conduct. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974) ("[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.");

*Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) ("[Broad injunctions] increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful."). SAP contends that Versata's definition of "Enjoined Capabilities" is impermissibly vague. (See Proposed Injunction, at 2); see also Nieswand Decl. ¶¶ 10-23. SAP also contends that Versata's proposed injunction contains multiple undefined terms, including "hierarchical access" and "pricing procedure." Accordingly, SAP provided a proposed modification to the injunction. SAP's proposed modification includes a lengthy definition for "hierarchal access" that is based on interrogatory responses. The modification also includes a proposed definition for "pricing procedure" and "pricing." SAP contends that these definitions are necessary because without them Versata may return to court alleging that other existing SAP functions involve "prices" and "pricing procedures." SAP also argues that Versata should be required to identify now anything else within SAP software it considers to fall within the scope of those terms to avoid the problem of continuous dispute over whether SAP software include "pricing" functions.

   Versata responds with its own modified definition of the term "Enjoined Capabilites" that, in part, eliminates the phrase "at a minimum" and includes other changes. Versata contends that its revised definition of "Enjoined Capabilities" is consistent with the trial record, including the testimony and exhibits, and reflects what "hierarchical access" is and what aspects of hierarchical access correspond to infringement. Versata also responds that the term "price" is a commonly used term for which plain meaning should suffice. Versata further argues that SAP's proposed definition of "price" and "pricing procedure" seeks to narrow the injunction by reading in claim limitations not present in the infringed claims. For example, Versata argues that the

inclusion of the term "condition types with associated access sequences" in SAP's definition fails to correspond to the infringement and the term "calculate a given price" used in SAP's definition is vague. Versata's argues that its revised definition of "Enjoined Capabilities" defines a "pricing procedure" as simply "steps to determine a price." The Court agrees and finds that Versata's proposed changes provide fair notice as to the precise scope of its enjoined conduct, and is therefore adopted by the Court.

### 3. The Injunction Will Make Clear that SAP May Not Continue its Infringement by Encouraging Some Other Entity to Infringe.

SAP argues that Versata's Proposed Injunction is overly broad because it seeks to preclude contributory or induced infringement for all three asserted claims (the "Infringed Claims"). (Proposed Injunction at 2). SAP argues that only claim 29 was alleged to be infringed indirectly, and that before the first trial, Versata dropped its allegations that claims 26 and 28 were indirectly infringed. SAP argues that to permit Versata to recapture these allegations would be erroneous and grossly unfair. The Court disagrees with SAP's characterization and finds that Versata is not seeking to "recapture" allegations of indirect infringement. Instead, the Proposed Injunction makes clear that SAP may not continue its infringement by encouraging some other entity to infringe. That is, the purpose of the injunction is to prevent future harm, which includes both direct and indirect infringement.

### 4. SAP Will be Given a 60-day Period for Compliance.

SAP argues that the proposed 30-day period for compliance is too short. Especially given that the parties' previously agreed to a compliance period of at least 90 days. (Dkt. No. 362, at 10 ("Versata does not oppose, however, SAP's request for 'a lead time of at least 90 days before any injunction takes effect.'")). Versata responds that SAP fails to point out that the

parties' previous agreement was made in October 2009, shortly after SAP was determined to infringe the '350 patent and at a time when SAP had not yet commenced its efforts to design-around the infringed claims. Versata contends that SAP has had almost two years since the August 2009 infringement verdict to consider, develop and finalize a plan for rolling out properly modified versions of the infringing products to its new and existing customers. In the light of these changed circumstances, the Court finds that a 60-day compliance period strikes a reasonable balance.

Accordingly, it is hereby ORDERED that:

Defendants are hereby restrained and enjoined, pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65(d), from any further infringement of United States Patent No. 6,553,350 B2 as stated in the Permanent Injunction Order issued today.

### C. Stay of the Injunction

Pending before the Court is Defendant's motion to strike Versata's equitable claims as sanction for Versata's violation of the March 6, 2008 Protective Order and February 26, 2008 Order. (Dkt. No. 144.) The Court held an evidentiary hearing on this issue on May 14, 2009. The Court finds that Versata breached the plain language of the Protective Order through a pattern of violations involving several members of its litigation team and discovery vendor. Given Versata's violation of the Court's order, it is fair to stay the injunction the Court has issued in this case. As a result, the Court exercises its equitable discretion in a manner adverse to Versata and stays the injunction pending the disposition of any appeal.

## IV. CONCLUSION

For the aforementioned reasons, the Court GRANTS Versata's motion for a permanent injunction. The Court further finds that Versata violated the Protective Order in this case. As a result, the court finds it should STAY the injunction pending the disposition of any appeal.

IT IS SO ORDERED.

SIGNED this 9th day of September, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE